MONCTJRE), P.,
delivered the opinion of the court:
When Floyd R. Whitehead commenced his mercantile business as agent of his wife Maria P. Whitehead in March or April, 1846, he was insolvent, having a short time before taken the oath of an insolvent debtor. He had a large family, consisting, besides himself and his *wife, of six children; three of whom were by a former marriage, and all of whom were under age, some of them being of very tender years. The family had no means of subsistence but what could be derived from *440 a small separate estate, which had been settled on the wife by her husband, in consideration of her relinquishing- her contingent right of dower in certain real estate conveyed by him to others, and from the use of a few slaves loaned to her by her father. These means being wholly inadequate for the purpose, it seems to have been determined by the husband and wife to endeavor to supply the deficiency by her engaging in a mercantile business on the credit of her separate estate, to be carried on by him as her agent. And accordingly, H. W. Heath, who had been doing business as a merchant on his lot of land called Fleetwood in the county of Nelson, being about, or anxious, to close his business, leased to her, or her husband as her agent, the said lot of land for three years, at the annual rent of $165, and sold to her, or her said agent for her, his stock of goods remaining on hand, amounting, per invoice, to $1,263.83, on a credit of six, twelve and eighteen months; the invoice being made out in the name of her brother Charles Williams, trustee in the deed of settlement; and the lease for the lot, and the bonds for the purchase money of tlie goods, being executed by her husband as her agent, and the bonds also, it seems, by him as her surety. About the same time, to wit, on the 1st of April, 1846, she executed a deed declaring that the said arrangement was made with her consent, and pledging her separate estate to secure the payment of the money due to Heath; which deed was also executed by her husband, and was acknowledged by both of them and duly recorded. Shortly after the business was commenced, to wit, on the 26th of May, 1846, her husband was appointed trustee instead of her brother, by a decree of the County court of *Nelson, in a friendly suit brought for that purpose. The business was carried on by her husband as her agent for four years and five or six months; at the expiration of which time she entered into partnership with Alexander R. Whitehead the oldest son of her husband, then about nineteen years of age; and thenceforward the business was conducted in the name of Floyd Iv. Whitehead, agent, & Son, and was continued about two years longer, until some time in the fall of 1852, when it was closed. No service was rendered by the wife in carrying on the business, which was conducted almost exclusively by her husband and his two oldest sons, Alexander and Kincaid, both of whom were minors. It seems to have been quite successful; especially while it was conducted solely in his name as agent of his wife, during which period a tract of land and a slave and other personal estate were acquired by means of the supposed profits of the business; and at all events it answered the chief purpose for which it was undertaken — that of affording adequate means for the comfortable support of the family. It was commenced 'and carried on without any cash capital, and exclusively or mainly on credit. No credit was given to the husband, who was deeply involved in debt, and seems to have been regarded as hopelessly insolvent. But credit was exclusively given to the wife, on'account of her supposed separate estate, and of the stock in trade and the prospective profits of the business carried on in her name and for her benefit; and also to Alexander R. Whitehead after he became a partner; he being young and uninvolved in debt, and also, it seems, industrious, capable, and attentive to business. At the close of the business and at the commencement of this litigation, in 1852, both concerns were heavily in debt; and it is doubtful whether the assets of the concern of “Floyd Iv. Whitehead, agent,” will be much, if any, more than sufficient to pay its debts; while *the assets of the concern of “Floyd B. Whitehead, agent, & Son,” will probably not be sufficient for the payment of its debts. The question in controversy now to be decided in this case is as to the proper application to be made of these assets; that is, whether they should first be applied to the payment of the debts of the said concerns respectively, or to the payment of the individual debts due by Floyd I,.'Whitehead, before the commencement of the business, to the appellants, who insist that the said assets constitute a part of his estate quoad his creditors, and that they, the appellants, have acquired liens upon the said assets by virtue of decrees obtained and execution issued against him.
If this question were to be solved according to the dictates of natural justice, there would seem to be little difficulty in answering it; and supposing the facts to be as before stated and all the parties to have acted bona fide, the answer would be, that those creditors who furnished the means of acquiring the property, and relied solely or mainly upon it for their reimbursement, are entitled to priority over creditors who furnished none of those means, and did not trust their debtor on the faith of any such property. The question is to be solved, however, not by the rules of natural justice, but upon settled principles of law and equity; and the inquiry now to be made is, what answer do those principles give to the questions?
In this case there was certainly no fraud, actual or constructive, on the part of the creditors, or any of them, of the mercantile concerns aforesaid, in dealing with or giving credit to the said concerns. Nor does it appear that there was any actual or constructive fraud on the part of Alexander R. Whitehead in any of these transactions. Nor does it appear that any fraud was actually intended by F. B. Whitehead and wife or either of them in making and executing the arrang-ements aforesaid. If ’‘"they are fraudulent and void as to his creditors, it is because they are so by construction and intendment of law, from the very nature of the transactions in themselves. But whether fraudulent actually or by construction of law, the effect is precisely the same.
*441 Where all the parties to a fraudulent transaction are sui juris, it is null and void as to all of them, though it may have been founded on valuable consideration. It is not valid even to the extent of such consideration. But this is not the case in regard to a feme covert, who may be a party to such a transaction, and have given value, or relinquished a right or interest, or incurred a loss or risk, in consideration thereof. In such a case the transaction is valid as to her, to the extent of affording compensation for the value given, or right or interest relinquished, or indemnity for the loss or risk incurred, as aforesaid. The participation of a wife in the fraud of her husband, will not impair her rights. Quarles v. Lacy, 4 Munf. 251; Blanton v. Taylor, Gilm. 209; Taylor v. Moore, 2 Rand. 563.
A married woman may engage in trade on her separate account, and enter into a partnership for that purpose, by the consent of her husband, and she will be entitled to the profits of the trade against her husband, even though his agreement be merely voluntary; and against his creditors (at least to some extent) if the agreement be founded on valuable consideration paid by or for the wife. A married woman who has a separate personal estate is regarded as a feme sole as to such estate, and may dispose of it and make it liable for her debts, subject, however, to such restrictions as may be imposed upon her by the instrument creating the estate. To the extent of her power of disposition over her separate estate, she may, at least with the consent of her husband, engage in trade, either solely or in partnership with another, and make *her separate estate liable for the debts incurred in conducting the business. And she will be entitled to the profits of the trade as against her husband, and also as against his creditors, to the extent at least to which such profits may not be due to labor, skill, capital or credit furnished by the husband, Story on Part. H 11, 12; 2 Story’s E)q. 1385-7; 2 Roper on Husband and Wife, ch. 18, $ 4, pp. 167-175. Where he furnishes all or a portion of the labor, or a portion of the capital or credit, used in carrying on the business the wife will be entitled, even as against his creditors, to such portion of the profits as will compensate her for what she may have contributed to the business either in the shape of capital or credit; at least provided there can be an apportionment of the profits according to the respective contributions of the parties. It may be impossible in some cases to make a complete apportionment. But to the extent to which a just apportionment can, it will be made by a court of equity.
The appellants contend that in this case the wife in fact contributed nothing to the business, and the husband everything in the shape of labor and skill of himself and his minor sons. She certainly contributed no part of the labor and skill with which the business was carried on ; and the appellants insist that she had no separate estate which she could charge with debts on account of the business, and could, therefore, have had no credit to contribute. If she had such estate, she certainly intended to charge, and did charge it, with the payment of the said debts. She did so expressly, by deed duly recorded, at least in regard to the debt to Heath & Co. for the purchase of the goods with which the business was commenced. Had she not such an estate? The property was expressly conveyed to her separate use for life, and the only question is as to her power to dispose of her life *estate or charge it with the payment of her debts. Ho such power is expressly given or denied to her by the deed. If such a power be not denied, either expressly or by implication, it is given as an incident to the separate estate. It may be denied by implication, and the question is, whether, looking to the whole instrument and the circumstances under which it was made, it was intended by the parties to exclude such a °p°wer- The consideration paid by the wifé for her separate estate in this case flowed entirely from her. It was her contingent dower right in the real estate conveyed by her husband. She doubtless might have had the subject of the separate estate conveyed absolutely and exclusively to her use instead of for life only. The interest conveyed is as nearly absolute as it well could be. To be sure the use is expressly limited to her for life, but any part of the subject may at any time be sold by the trustee with her consent, and the proceeds of sale invested in other property in trust for her, and after her death the subject is to be conveyed to her descendants, if any, and if none, to her heirs at law: “provided always, that the said Maria P. shall have the power and authority to convey the said property, or any part thereof, by will, to such person or persons as she shall choose, but not out of her own family or the family of her said husband.” There can be no doubt, I suppose, but that the deed conveys the estate to her use exclusively during her life, notwithstanding the terms in which the use is declared; that is, “to the separate use and benefit of the said Maria P. Whitehead for and during her natural life, and shall remain in her possession for the support and maintenance of the said Maria P. and her issue and family, and for no other purpose whatever. ’ ’ These latter words, “for the support and maintenance of the said Maria P. and her issue and family, and for no other purpose whatever,” *seem to have been intended only to show the motive and purpose for directing the property to remain in her possession instead of that of the trustee, and more plainly to exclude any claim or control of the husband or liability for his debts, and not to limit or curtail the separate use and benefit for life immediately before, in the same sentence, expressly given to her, nor to give to her “issue and family” any interest in the subject, in law or equity, during her life. There is a much plainer indication of an *442 intent to give an exclusive use for life to the wife in this case, than there was in the cases of Wallace & Wife v. Dold’s ex’or, &c., 3 Leigh 258, and Stinson, ex’or, v. Day & Wife, 1 Rob. R. 435; in which it was held that an exclusive use was given. This is not like the case of Markham v. Guerrant, &c., 4 Leigh 279, in which an improvident husband conveyed an estate to a trustee in trust for the support and maintenance of himself and his wife and their children and family during the joint lives of himself and his wife and the life of the longest liver of them, remainder to their children, with full power to the trustee to manage the estate, and to sell any part of it to pay the debts of the husband then due; in which it was held that neither the husband nor wife could charge the profits of the estate during their lives with their debts, nor even could the trustee himself anticipate the profits by making them liable in advance for present expenses. There, the manifest intent and meaning of the settlement was to guard against the prodigality of the husband, by placing the estate, subject to the payment of his debts, in the hands and under the active control and management of a trustee, in trust to receive and appH' the profits as they accrued to the support of the family, for which they were barely adequate. To , have permitted the husband or wife, or even the trustee, to anticipate the profits for the purpose of defraying *the current expenses of the family, would, in the opinion of this court, have defeated the plain purpose of the settlement. Here, there was no intent to guard against the mismanagement of the husband, nor against any undue influence which he might have over her, but merely to secure to her, against the claims of his creditors, an equivalent for the contingent right of dower relinquished by her. The separate estate was not directed to remain in the hands and under the active control and management of the trustee, in trust to receive and apply the profits during her life; but it was expressly declared in the deed that the property should remain in her possession for the support and maintenance of herself “and her issue and family, and for no other purpose whatever.” The profits of the property were wholly inadequate to the support of the family; but in addition to the use of the few slaves loaned to her by her father, it was all that she had to depend upon for that purpose. Had she not a right to use her separate estate to the best advantage for the promotion of the end in view; and for that purpose, with the advice and concurrence of her husband and her brother and trustee, to engage in a small mercantile business, to be conducted by her husband and his sons on the credit of her separate estate? I think she had. And if so, she had a right to bind, and did bind, her separate estate for the debts of the business in which she engaged. There is great force, too, in the view presented by the counsel for the appellees, that she consented to the terms of the settlement in consideration of the amount and value of the subject. And that subject being reduced in amount and value by the decree rendered at the suit of lenders, a creditor of her husband, it would seem to be unjust to restrict her in the use and enjoyment of the residue, which is only an equivalent for the dower right relinquished bjr her.
*But she is at all events entitled to have the debts of the business discharged out of its assets in exoneration of her separate life estate, even if she be entitled to nothing more; and such would be her right even though the transaction as to everything beyond an amount sufficient for the payment of the debts might be fraudulent and void as to creditors of the husband. A wife, we have seen, notwithstanding the fraud of her husband and her participation in it, is at least entitled to indemnity against loss out of the subject of the fraud, if sufficient for the purpose; and the wife in this case is, therefore, entitled to have the assets of the concern applied in discharge of its debts and in exoneration of her separate estate therefrom. This right of the wife is unaffected by the value of the separate estate, and as well exists, and to the same extent, where such value is small as where it is large. It is not a right to receive gain, but to avoid loss. It takes nothing from the creditors of the husband, but merely prevents them from realizing anything on account of their claims from a mercantile operation of their insolvent debt- or carried on upon the credit of the separate estate of- his wife, until the expenses of the operation have been first discharged and her separate estate thus exonerated therefrom. Their claim, if they have any, is to the profits of the operation, and there can be no profits until the debts incurred' in carrying it on. are first paid. Nothing can be more just thah this. If the wife had received any benefit from the business beyond her support as a member of the family of her husband, it might be just and right to hold her, or rather her separate estate, accountable to that extent. But it does not appear that she did, and the probability is that she did not. The support of the family was a necessary part of the expenses of the operation. It could not otherwise be carried on, and could, therefore, ^realize no profits for anybody. The support of a man’s wife and children, constituting a .part of his family, is in effect the support of himself, or at least stands on the same footing. Those who credited the wife or her separate estate in this case, did it with a knowledge that she and the rest of the family must derive their needful support chiefly from the proceeds of the business; and, therefore, no injustice was done thereby to them. Certainly no such injustice was done to creditors of the insolvent husband, whose debts were created before the business carried on in the name and on the credit of the separate estate of the wife was commenced.
I have thus far proceeded on the idea that *443 the wife had a separate estate to some extent, or of some value, which she could, and did, make liable for the debts of her mercantile operations. But suppose I am wrong in this, and that she had no such separate estate or no such power over it. Does it necessarily follow that the creditors of the mercantile concerns in which she was engaged are not entitled to priority of payment out of the assets thereof, over the individual creditors of her husband? I think not. If she had in truth no separate estate which she could make liable for her debts, the question was at least a very doubtful one; and her creditors supposed that she had, and bona fide g,ave her credit upon the faith of her having such estate. And though they cannot charge the separate estate cotiveyed by the settlement, they ought certainly to be entitled to charge the property which they sold her or which was bought with the money they loaned her, or the property, choses in action and money acquired by the trade carried on by her with the means afforded by them on the credit of her supposed separate estate, including her stock in trade. That stock in trade at least is separate estate though there be no other, and is liable as such for the debts of carrying on the business. *Such liability may not rest upon the ground of indemnity, as in the case of her having other separate estate liable for her debts, but it seems to be amply supported by other principles of equity which are equally obvious.
But suppose the wife had not in fact, and had not been supposed to have, any separate estate, but that, being without any adequate means of support for herself and family, and her husband being insolvent, she, with his consent and for the purpose of obtaining a support, engaged in mercantile business for her separate use by the aid of her friends in loaning her money or selling her goods on the credit of the business; would not her stock in trade be liable for the payment of her debts thus contracted; and so liable, preferably to the proper debts of her husband, even though the necessary labor and skill used in conducting the business was furnished by him and his minor sons? I think that it would, and I am aware of no principle of law or equity, nor even of any decision of any court, which is in conflict with a view consisting so much with that what seems to be just to all concerned. Of course I assumed that the creditors of the concern, if it may be so called, are bona fide creditors, and intend only to help the wife and her family, and not to defraud her husband’s creditors and cover up his property and place the fruit of his labor out of their reach. And of course I say nothing, for the present at least, in regard to the profits of the operation. I am now speaking only of the right of the wife and her creditors in such a case to have the debts of her mercantile concern paid out of her stock in trade in preference to any other debts for which it may be liable. What injury is done to the creditors of the husband by giving this right of preference to the creditors of the wife? They (the former) have lost nothing and risked nothing by the operation, but on the contrary may be gainers by it, if the profits *are liable for the satisfaction of their claims. Without some such arrangement, their insolvent debtor could do nothing either for them or for his family, and their claims must remain forever unsatisfied, The husband’s agreement that his wife may carry on a trade for her separate use is good against him, as we have seen, even though it be voluntary; and is good also against his creditors, if founded on valuable consideration. Suppose she is engaged in trade with her husband’s consent, and third persons bona fide give her credit on the faith of her trade. Is the liability of her stock in trade for the payment of their claims, in preference to the claims of the creditors of her husband, to depend upon whether his agreement to the trade was founded on valuable consideration or voluntary only? Is it incumbent on such persons before they give such credit to ascertain that fact? But why should it be so if they do not interfere with the profits of the trade, to which only the creditors of the'husband can have any just claim? It seems to me, therefore, that in every such case the stock in trade is in itself separate estate, liable as such to the payment of the debts of the business, and is a trust fund set apart by the act of the parties and looked to by the creditors for the payment of said debts. To permit the creditors of the husband, after remaining silent for six or seven years while the business was in operation, now to come foward for the first time, and have, not only the profits of the business, but the whole stock in trade applied to the payment of their claims leaving unsatisfied the claims of those from whom the stock was derived and who gave credit on the faith of it, would be like permitting not only gross injustice but the perpetration of a fraud. To say the least, the creditors of the business, if they be not creditors of the wife on account of her separate estate, are creditors of the husband, and cannot stand on lower ground than his other 'xcreditors. But they stand on this higher ground, that the assets of the business were derived from them, and were looked to by them as the means of satisfying their claims, and they seem, therefore, by the understanding of the parties, to have an express or implied lien upon those assets.
It results from what I have said that, in my opinion, the assets of the concern of Dloyd R. Whitehead, agent of Maria P. Whitehead, arc liable for the debts of that concern, preferably to the individual debts of said Eroyd R. Whitehead, and also that the assets of the concern of Rloyd R. Whitehead, agent, & Son, are in like manner liable for the debts of that concern. But there is another ground on -which the assets of the latter concern are first liable for the debts of that concern; and that is, because it was a partnership, the well settled prin *444 ciple in regard to which is, that “no one partner has any right to share in the partnership property except what remains thereof after the full discharge and pa3rment of all debts and liabilities of the partnership ; and therefore each partner has a right to have the same applied to the due discharge and payment of all such debts and liabilities, before any one of the parties, or his personal representatives, or his individual creditors, can claim any right or title thereto.” And there is, as between the parties and the partnership creditors, a lien on the partnership property, “or at least an equity, which may be worked out through the partners in favor of the creditors, although it may not directly attach in the creditors by virtue of their original claims in all cases.” Story on Part. 'i% 97, 326.
An infant is capable of being a partner, and his contract of partnership is not void, but voidable onl3r. If he affirm it after he arrives at age he will be bound by it. Story on Part. \ 7. Alexander R. Whitehead, though an infant when'he entered the partnership, affirmed it after *he became of age, and is therefore one of the partners. Though his father was entitled to the custody of his person and to his services during his infancy, 3'et it was competent for the father, notwithstanding he was indebted and insolvent at the time, to release to his son all claim to the services of the latter. Indeed, the i nsolvency of the father may be a motive and a reason for releasing his claim to the custody and Services of his infant child, in order that the child, by his own labor, may provide for himself. His claim to such custody and services results from his duty to maintain and educate the child. The father, says Blackstone, has the benefit of his children’s labor while the3r live’ with him and are maintained by him, and this is no more than he is entitled to from his apprentices or servants. 1 Bl. Com. 453; 2 Kent’s Com. 193-4, 203; 1 Tuck. Com. Book 1, p. 129. That a father may by agreement with his minor child, relinquish to the child the right which he would otherwise have to his services, see the cases cited in the note (a) to 2 Kent’s Com. 194; also the cases of Lord v. Poor, 10 Shep. R. (23 Maine) 569; Lyon v. Bolling, &c., 14 Alab. R. 753; and Covington v. Cheek, a MS. decision of the Special Court of Appeals, cited by the counsel for the appellees. In this case the father consented to the son’s being a partner, which was a relinquishment of all claim to the services of the son during the existence of the partnership, in the business of which the son was actively engaged. It seems to have been well understood and agreed that the son was to have one-fourth of the profits of the partnership.
It also results from what I have said that, in my opinion, if there be any surplus of the assets of P. B. Whitehead, agent of Maria P. Whitehead, after the payment of the debts of that concern, it will be applicable in the next place to the payment of any balance which *may remain unpaid of the debts of the other concern, after applying to their payment all the assets of that concern, though for one-fourth of the said balance Alexander R. Whitehead will be liable in the first place before any such surplus will be liable therefor; and on the other hand, if there be any surplus of the assets of P. B. Whitehead, agent, & Son, after the payment of the debts of that concern, one-fourth of the said surplus will belong to the said Alexander R. Whitehead as his share of the profits, and the other three-fourths will be applicable in the next place to the payment of any balance which may remain unpaid of the debts of the concern of P. B. Whitehead, agent, after applying to their payment all the assets of that concern.
In regard to the objection taken in the assignment of errors in the petition, “that there was no disclosure on his sign by Whitehead, of his principal, as required by the act in the Code and the act of 1839,” and that the goods of both of the concerns of “Whitehead, agent,” and “Whitehead, agent, & Son,” were liable to the lien of the appellants; the objection was not taken in the bill, nor in any of the proceedings in the original suit of Penn v. Whitehead in the court below, and it was too late to take it for the-first time in the petition for an appeal. It was taken in the bill in the other suit, of Hargrove, &c. v. Whitehead, &c. ; in which two suits the decree appealed from was rendered. Maria P. Whitehead, in her answer to that bill, denies the charge on that subject contained in the bill, and prays for full proof on the part of the plaintiff of anything which would be calculated to prejudice her rights. There is no proof on the subject in the record. The decree of Hargrove, &c., was not obtained nor the suit brought to enforce the lien of the said decree and of the execution issued thereon against the subject in controversy in this case until 1853, *while the first appeal in Penn v. Whitehead was pending in this court. As to the concern of ‘‘Whitehead, agent,” its operations commenced in March or April, 1846, and ended in September or October, 1850, and are governed almost entirels' by the act of 1839 (Sess. Acts, p. 45, ch. 72), which was in force until the first of July, 1850, when the Code took effect. The act of 1839 merely required that the name of the principal of a person trading in his own name as “agent” should be disclosed, without prescribing the manner of such disclosure; while the Code, ch. 145, § 13, requires the disclosure to be “by a sign,” &c. It appears that there was in fact a disclosure of the name of the principal of “Whitehead, agent,” according to the requisition of the act of 1839. As to .the concern of “Whitehead, agent, & Son,” it commenced its operations after the Code took effect; but as Alexander R. Whitehead was a partner in that concern, and has a right, as such, to have its debts discharged out of its assets befor.e any part thereof can be applied *445 to the payment of the debts of R. I-/. Whitehead, even though the latter may not have complied with the requisition in the Code in regard to the disclosure of the name of his principal, it is immaterial whether there was such compliance or not, at least so far as the question of priority between the creditors of that concern and the individual creditors of B. B. Whitehead can be affected thereby. It may be material in regard to the profits, unless they are otherwise liable to the claims of the latter creditorsas to which I will presently inquire. But in regard to both concerns, there is a ground on which I think their creditors respectively are entitled to priority over the individual creditors aforesaid, notwithstanding any non-compliance with the requisitions of the act of 1839, or of the Code as aforesaid; and that ground is, that a wife cannot be affected by the fraud of her husband. She has a right, as *1 think I have shown, to have the assets of the concerns in which she was engaged applied to the payment of the debts of those concerns in exoneration of her separate estate, and will not be deprived of that right by any fraud of her husband in trading in his name as agent without disclosing the name of his principal. Other reasons might be assigned in answer to this objection, but I think it has already been sufficiently answered.
In regard to the claim of the appellants, that if "their debtor P. X,. Whitehead be not as to them the owner of all the property in controversy, he was at least entitled to compensation for his services and those of his minor sons, in attending to the business of the said concerns, and the amount to which he was so entitled should be applied to the payment of the debts due to them. There appears to be due by P. B. Whitehead to the concern of “P. B. Whitehead, agent,” abalance of $3,102.84, and to the concern of !!P. B. Whitehead, agent, & Son” a balance of $1,082.48, which, I think, would be ample compensation for his services. The services of his minor sons seem to have been fully compensated by what they received from the concerns to which those services were respectively rendered. While A. R. Whitehead was a partner, he has of course no claim to compensation for services other than his interest in the profits as a partner. But even if P. B- Whitehead had any claim to compensation for his services, it would be in subordination to the claims of the creditors of the concerns to priority of payment out of the assets of said concerns respectively. He could stand on no higher ground than a partner whose individual claim against the partnership is always postponed to the payment of its debts to others. Story on Part. ‘i'i 390-405. In fact, it seems that a husband who permits his wife to engage in trade on her separate account is personally liable at law for the debts contracted *by her in carrying on the business, unless there be an understanding with the creditors to the contrary, or the property is legally vested in other trustees than himself to enable her to carry on the trade; but a court of equity, it is conceived, will protect the husband from his legal responsibility and confine the creditors to the assets in the trade. Such is the conclusion drawn from the authorities on this subject in 2 Roper 173-178. See also, 2 Story’s Pq. 1 1387, note (3). At all events I think it may be safely stated that a husband can set up no claim to compensation for services rendered in carrying on the separate trade of his wife, which would prevent the full payment of what may be due by her to others on that account.
In reg'ard to the several exceptions to the commissioner’s report, I deem it sufficient to say that I see no error in the disposition made of them by the Circuit court.
It now only remains for me to say what, in my opinion, is to be done with any surplus which may remain of the assets of the two concerns aforesaid after paying their debts and deducting anything that majr be due to A. R. Whitehead on account of his fourth of any profits which may possibly have been realized by the concern of “S'. B. Whitehead, agent, & Son.” I think it is a part of the estate of R. R. Whitehead, quoad his creditors, and ought to be paid to the appellants in the order of priority in which they obtained their liens by decree and execution. I think that Mrs. Maria P. Whitehead has been fully compensated for the credit of her separate estate, which is all that she contributed to the business, by the support of herself and family derived from it, and by the indemnity secured to her separate estate in the application of the assets to the payment of the debts of the said concern as aforesaid; and that the said surplus, at least, *is justly due to her husband, quoad his creditors, for the labor and skill of himself and his minor sons, contributed by him to the business. I say quoad his creditors, because his agreement that his wife should carry on the trade, though voluntary, would be valid against him, but not against his creditors beyond the extent aforesaid. Nothing seems to be better settled than that the husband’s voluntary agreement that his wife may carry on a trade for her separate use, though good against him, is fraudulent and void as to his creditors, at least to the extent of subjecting the profits of the trade to liability for their claims; and that, too, though the trade be carried on by the skill and labor of the wife, as for instance, the trade and business of a milliner. A fortiori is this the case where, as here, the wife has no agency in conducting the trade, but it is carried on exclusively by the skill and labor of the husband and his minor sons; the whole time and services of whom, at least of the husband, seem to have been devoted to the business while it was in active operation — a period of seven or eight years. Now I take it to be a sound principle of law, that by no agreement or arrangement between husband and wife alone founded on no valuable consideration, can the profits of the future labor of either *446 of them, much less of the husband alone, be secured to the use of them, or either of them or their family, in exclusion of the claims of their creditors, existing- at the time such agreement or arrangement is made; and any such agreement or arrangement, entered into for the purpose of having that effect, would be a mere contrivance to hinder, delay and defraud creditors, and would be null and void as to such creditors, according to the true intent and meaning, if not the literal terms-, of the statute. Code, ch. 118, 1 and 2. No one will contend that such profits can thus be secured to the husband alone in exclusion of the claims of his creditors. *Nor can they,any more be thus secured to the use of his wife or family, at least in exclusion of the claims of his existing creditors; for a husband who is not indebted, or who provides amply for the payment of his present debts, may make a voluntary deed for the benefit of his wife and family in exclusion of the claims of his future creditors, because the deed being recorded as. required by the registry laws, is notice to the world; and persons afterwards crediting the husband, do it in subordination to the rights created by the deed. A man who is without the means of paying his debts, is morally bound to do all he honestly can to acquire such means, and honestly to devote all the profits of his future labor to the payment of his debts. To be sure the law cannot, or does not, compel a man, in advance, to labor for his creditors. And if he chooses to be so dishonest as to idle or give away his time, rather than labor for the means of paying his debts, the law cannot, or does not, attempt to prevent it. But if he does labor and make any profit for himself, or his wife and family, which is the same thing, his creditors may subject it to liability for the payment of their claims. Husband and wife are one in law, and he is bound, morally if not legally, to support her and the rest of his family. In laboring for them he labors, in effect, for himself. Every benefit secured to them is a benefit, incidentally, secured to himself. And as the law will not allow him directly to secure the profits of his future labor to himself, in exclusion of the claims of his creditor, it will not allow him, indirectly, to do the same thing, by securing such profits to his wife or family; at least quoad his existing creditors. A man is not apt to give away his labor, or even idle away his time. If he is not honest enough to wish to pay his debts, self-interest prompts him to do something, and to try to secure to himself and his family the profits of his skill and labor. *This motive of self-interest is generally sufficient, without being assisted by legal means, to stimulate a man into’ action and prevent him from throwing or giving away his time, instead of trying to make a profitable use of it. And the law, instead of attempting to apply such a stimulus, contents itself with subjecting any profit he may make for himself or family to liability to the payment of his debts as aforesaid.
I have, in my observation, on this subject, used the \yord profits, because I wish to be understood as confining my meaning in this connection to them, and not as extending it to the whole proceeds of a man’s future labor. The idea of “profits” presupposes the payment of all necessary expenses of the business byr which such profits are made. A man without means cannot carry on a business which occupies his whole time, unless he is supported while he is doing so. The expenses of his support are a part of the necessary expenses of the business, without which there can be no profits; and the same may be said of the support of his wife and family. I do not therefore mean to say that a man, who is without the means of paying his debts, cannot make a valid arrangement to secure the proceeds of his future labor as they accrue, first to the payment of the necessary current expenses of himself and family, and then to the payment of his debts. Such an arrangement, if fairly made and carried into execution, would, by all men, be considered honest, and would no doubt be lawful. In the absence of a bankrupt law, I. do not see how an insolvent debtor could otherwise do anything for the benefit either of his creditors or himself. It is the policy of a bankrupt law not only to exempt an honest insolvent debtor from personal liability for the payment of his existing debts on his making a full surrender of his estate for that purpose, but even to secure to him a portion of his estate *for the present support of himself and family. But this cannot be done on general principles and in the absence of a bankrupt law.
I have also confined my observations on this subject to an arrangement between husband and wife, so far as jt may be voluntary, and not founded on any valuable consideration flowing from the wife herself or any other person acting in her behalf or for her benefit. When the consideration flows only from the wife, it may make the-arrangement valid as to creditors, to the-extent of affording her a reasonable compensation or indemnity, as I have before endeavored to show; but beyond that extent, the arrangement is voluntary. Where-the consideration flows from a third person, the effect may be otherwise; but upon that question I express no opinion, because it does not arise in this case. Here, no consideration flowed from a third person. Those who credited the wife or her separate-estate, did it on their own account, and because they thought they could safely do so; or at all events, without any stipulation with the husband that she should have the-profits of the business for her separate use, even if such a stipulation would have been of any avail against his creditors. This is a sufficient answer, I think, to the case of Hodges v. Cobb, 8 Rich. S. C. Law. R. 50, cited and much commented and relied upon by the counsel for the appellees. There, the arrangement was made between the husband and brother-in-law of his wife, whereby the brother-in-law, a wealthy man,, advanced to the husband, an insolven *447 debtor, $4,000, to be used by the latter in buying and selling negroes; one-half of the net profits of which trade were to enure to the separate use of the wife: and the arrangement was held to be valid against the execution and other creditors of the husband. In the reporter’s marginal abstract of the case, he states it as having decided that “an insolvent husband *may stipulate beforehand that the. proceeds of his labor shall be appropriated to the sole and separate use of his wife, and such stipulation is no fraud upon his creditors.” While I have great respect for the court which decided that case, and do not mean to say whether or not I would have decided it otherwise, as it is not necessary or proper for me to do so, the case being materially different from this, I must yet say that I do not concur in any of the views of the court in that case which are in conflict with what I have said.
On reviewing my notes of the argument of this case, I perceive that I have overlooked an objection taken by the appellees, which I ought to have noticed earlier in this opinion. It is, that there is no evidence in the one case, nor sufficient evidence in the other, that executions were sued out on the decrees in favor of the appellants, so as to give them liens on the personal estate in controversy. If this fact be material, the objection is not fatal on an appeal from an interlocutory decree, which ivas merely intended to settle the principles of the cause. The cases proceeded in the court below upon the apparent concession of the fact as averred, and no doubt truly averred, in the bills respectively ; and when they go back to that court the necessary evidence may be supplied, or an inquiry may be made by a commissioner to ascertain the fact. Indeed, the decree appealed from seems to contemplate such an inquiry, in declaring the appellants entitled to the residue, &c., if any there shall be, “in the order in which they obtained their liens. ’ ’
Upon the whole I think the decree ought to be amended, so as to make it conform to the foregoing opinion, and, as amended, affirmed.
The decree is as follows:
The court is of opinion, for reasons stated in writing *and filed with the record, that the assets of the mercantile concerns of Floyd L/. Whitehead, agent for Maria P. Whitehead, and of Floyd R. Whitehead, agent, & Son, are liable, in the first place, to the payment of the debts of the said concerns respectively; that Alexander R. Whitehead, as a partner in the concern of Floyd R. Whitehead, agent, & Son, is entitled to one-fourth of any surplus which may remain of its assets after the payment of its debts, and bound for one-fourth of the amount which may remain unpaid of its debts after applying to their payment the assets of said concern; that if there be any surplus of the assets of Floyd I/. Whitehead, agent as aforesaid, after the payment of the debts of that concern, it will be applicable, in the next place, to the payment of any balance which may remain unpaid of the debts of the other concern, after applying to their payment all the assets of that concern, though for one-fourth of the said balance Alexander R. Whitehead is primarily liable as aforesaid, and the said surplus is not to be liable unless he should be unable to pay the same; that, on the other hand, if there be any surplus of the assets of Floyd R. Whitehead, agent, & Son, after the payment of the debts of that concern, three-fourths of the said surplus will be applicable in the next place to the payment of any balance which may remain unpaid of the debts of the concern of Floyd I/. Whitehead, agent, after appty-ing to their payment all the assets of that concern; and that any ultimate surplus which may remain' of the assets of the two concerns aforesaid, or either of them, after paying their debts and deducting anything that may be due to Alexander R. Whitehead as aforesaid on account of his fourth of any profits which may possibly have been realized by the concern of Floyd L,. Whitehead, agent, & Son, is a part of the estate of said Floyd F. Whitehead as to the claims of the appellants against him, and ought *to be paid to them on account of the said claims, in the order of priority of their liens upon the subject by decree or execution. And the court is further of opinion (and it is accordingly so ordered), that the said decree be amended so as to make it conform to the foregoing opinion, and that in the said decree so amended there is no error. Therefore it is decreed and ordered, that the said decree as amended be affirmed, and that the appellants James S. Penn and Thomas P. Fitzpatrick, administrator de bonis non with the will annexed of William Fitzpatrick deceased, the former out of his own estate and the latter out of the estate of his said testator in his hands to be administered, do pay unto the appel-lees thirty dollars damages, and also their costs by them about their defence in this behalf expended; which is ordered to be certified to the said Circuit court.